[No. B209525. Second Dist., Div. Six. Oct. 27, 2008.]

SANTA BARBARA COUNTY COALITION AGAINST AUTOMOBILE SUBSIDIES, Plaintiff and Appellant, v.
SANTA BARBARA COUNTY ASSOCIATION OF GOVERNMENTS, Defendant and Respondent.

1230

## COUNSEL

Eugene S. Wilson for Plaintiff and Appellant.

Dennis Marshall, County Counsel, Kevin E. Ready, Sr., and Jordan Sheinbaum, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**PERREN, J.**—Respondent Santa Barbara County Association of Governments (SBCAG) formulated a plan outlining the county's transportation needs, and proposed a ballot measure that would impose a one-half percent sales tax to pay for the projects set forth in its plan. Appellant Santa Barbara County Coalition Against Automobile Subsidies filed a complaint for injunctive and declaratory relief alleging that SBCAG unlawfully advocated and spent public funds for passage of the ballot measure.

SBCAG filed a special motion to strike under Code of Civil Procedure section 425.16,[1] asserting that appellant's complaint constituted "strategic lawsuit against public participation," commonly referred to as a SLAPP suit. Appellant appeals the trial court's order granting the motion.[2] Appellant contends that SBCAG is not protected by the anti-SLAPP statute because SBCAG does not have a constitutional right of free speech to engage in

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] The order granting the special motion to strike is appealable. (§ 904.1, subd. (a)(13).)

partisan electoral advocacy, and does not have a constitutional or statutory right to expend public funds for the purpose of influencing the outcome of an election. We affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant, a nonprofit corporation incorporated on February 19, 2008, opposes "Measure A," which has been proposed for submission to the voters of Santa Barbara County in the November 2008 election.[3] Measure A would extend a one-half percent Santa Barbara County sales tax initially approved by the voters in 1989 and scheduled to expire in 2010. SBCAG is the local transportation authority for the county with the power, subject to voter approval, to impose a sales or use tax of up to 1 percent to provide funding for transportation services in the county. (Pub. Util. Code, § 180000 et seq.) SBCAG was the legislative proponent of the 1989 ballot measure.

In 2007, SBCAG began preparing a new expenditure plan to meet the future transportation needs of the county. After transportation funding options were established, SBCAG recommended that the county board of supervisors adopt an ordinance that would submit an extension of the 1989 sales tax to a vote of the county electorate in a ballot measure now designated as Measure A.

SBCAG retained a private consultant to survey voter support for an extension of the sales tax. The consultant determined the arguments in favor of extension that were received most favorably by the voters polled, potential arguments in opposition, and the best strategy to maximize voter support. In addition, SBCAG staff and committee members attended public meetings with civic groups, during which staff presented information regarding the transportation expenditure plan and the importance of extending the 1989 sales tax to satisfying the county's transportation needs.

In March 2008, appellant filed a complaint against SBCAG, Jim Kemp, its Executive Director, and the City of Santa Barbara.[4] The complaint alleges

---

[3] SBCAG filed a request for judicial notice of appellant's articles of incorporation and fictitious business name statement. We will take judicial notice of those documents. In a second request, SBCAG requests that we take judicial notice of appellant's campaign disclosure forms. That request is also granted. SBCAG also requested judicial notice of various briefs filed in the case of *Vargas v. City of Salinas* 43 Cal.Rptr.3d 748 [135 P.3d 1], review granted April 26, 2006, S140911. We deny the request for judicial notice of those briefs.

[4] Based on the record, the city has never appeared and the only cause of action expressly naming Kemp as a defendant was dismissed on April 15, 2008.

that, since June 2007, SBCAG has been promoting Measure A and, in so doing, has interfered with the electoral process, improperly used public funds, and obstructed appellant's ability to marshal opposition to the measure. The complaint alleges that SBCAG has engaged in a "government-sponsored political campaign" in favor of the measure, including use of a polling firm to craft favorable language for the measure. The complaint seeks to enjoin SBCAG from advocating passage of Measure A or expending public funds in such advocacy, and a declaration that such advocacy is unlawful.

At the time the complaint was filed, SBCAG had not obtained final approval by the county of its transportation expenditure plan or the ordinance that would constitute Measure A and, accordingly, Measure A had not been qualified or certified for placement on the ballot. The transportation expenditure plan and ordinance were subsequently approved and Measure A has been placed on the November 4, 2008, ballot.

On April 2, 2008, appellant filed an application for a preliminary injunction. On April 14, 2008, defendants SBCAG and Jim Kemp filed a special motion to strike plaintiff's complaint under the anti-SLAPP statute. (§ 425.16.) In its special motion to strike, SBCAG argued that (1) the complaint seeks to impose liability for conduct protected by the First Amendment rights to free speech and petition, (2) appellant cannot show a probability of prevailing on the merits because Measure A was not on the ballot at the time the complaint was filed, and (3) SBCAG did not expend public funds advocating passage of the measure or expressly advocate passage in any other manner.

Appellant argued in opposition that SBCAG had no free speech rights as a government agency, and was expressly advocating passage of Measure A and expending public funds in that advocacy. Appellant filed a declaration that the polling firm retained by SBCAG used poll results to manipulate the language of the ballot measure to favor passage, and that SBCAG urged community groups and community leaders to support passage of the measure and plans to continue advocating passage.

After a hearing on June 17, 2008, the trial court granted the special motion to strike, ruling that the challenged activities by SBCAG were in furtherance of its rights of free speech and petition, and that there was no probability that

appellant would prevail on the merits of its claim. (§ 425.16, subd. (b)(1).) The court ruled that appellant's request for a preliminary injunction was moot.

## DISCUSSION

### *Allegations Sufficient to Give Appellant Standing*

SBCAG contends that appellant has no standing as a taxpayer to bring its action. SBCAG argues that appellant has not alleged payment or liability to pay any tax in the County of Santa Barbara, and that appellant cannot challenge activity that occurred prior to appellant's incorporation. We disagree.

■ Section 526a provides: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein." Section 526a is intended to enable citizens to challenge governmental action which would otherwise go unchallenged because of standing requirements. (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267–268 [96 Cal.Rptr. 42, 486 P.2d 1242]; *Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1240 [94 Cal.Rptr.2d 740].) Taxpayer standing allows prompt action to prevent public injury, and the statute must be construed liberally to achieve this purpose. (*Blair*, at p. 268; *Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 749 [53 Cal.Rptr.3d 203].)

■ In alleging that it has paid sales tax on the sale of its T-shirts, appellant has established liability to pay a tax assessed by Santa Barbara County. The complaint also alleges facts satisfying the requirement of an "illegal expenditure" by alleging the unlawful expenditure of public funds by SBCAG in promoting Measure A. (See *Citizens for Uniform Laws v. County of Contra Costa* (1991) 233 Cal.App.3d 1468, 1472–1473 [285 Cal.Rptr. 456].) SBCAG argues that appellant's sale of goods is not payment of a tax because a merchant is merely the agent of the Board of Equalization. Even if a merchant passes the tax on to the consumer, however, a sales tax is considered a tax on the retailer. (See *Cornelius v. Los Angeles County etc. Authority* (1996) 49 Cal.App.4th 1761, 1777–1778 [57 Cal.Rptr.2d 618].)

Furthermore, appellant has standing to challenge actions that occurred prior to its February 19, 2008, incorporation. Although there are no cases directly on point, one court concluded in a mandamus action that a public interest group could challenge pre-formation conduct based on the practical reality that many public interest groups are formed as a result of particular governmental action. (*Hogar Dulce Hogar v. Community Development Commission* (2003) 110 Cal.App.4th 1288, 1295 [2 Cal.Rptr.3d 497].)

### Challenged Acts in Furtherance of Right to Free Speech

Appellant contends that the trial court erred in ruling that the activity of SBCAG furthered its right of free speech because governmental entities and employees do not have free speech rights. We disagree.

■ Section 425.16 provides a "remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) Any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

■ The statute establishes a two-step process for deciding whether an action is a SLAPP suit. The court first determines whether the complaint challenges constitutionally protected activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].) If so, the court then determines whether the plaintiff has shown a probability of prevailing on the claim by presenting evidence of a prima facie case that would support a judgment if proven at trial. (*Ibid.*; *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) On appeal, we independently review both of these trial court determinations. (*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 352 [22 Cal.Rptr.3d 724].)

■ SBCAG has shown that appellant's claim arises from SBCAG's constitutionally protected activity and, therefore, is a SLAPP suit. First, government agencies and their representatives have First Amendment rights, and are "persons" entitled to protection under section 425.16, subdivision (b). (*Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1114 [57 Cal.Rptr.2d 207]; *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn., supra*, 125 Cal.App.4th at p. 353.) It can no longer be questioned that section 425.16 extends to government

entities and employees that issue reports and take positions on issues of public interest relating to their official duties.

Second, SBCAG has demonstrated that the complaint challenges conduct expressly defined by the statute as acts in furtherance of free speech rights. (§ 425.16, subd. (e); see *Navellier v. Sletten, supra*, 29 Cal.4th at p. 88.)[5] Based on the complaint, (1) SBCAG made oral and written statements concerning the county's transportation requirements, the cost thereof, and the need for continuation of the sales tax to provide the revenue necessary to satisfy those requirements, (2) the statements were made in official government proceedings and public forums, and (3) the statements otherwise concerned issues of public concern being considered by a legislative or executive body. (§ 425.16, subd. (e).)

Although appellant challenges the extension of free speech rights to government speech, appellant's principal argument is that government entities are prohibited from expending public funds for the purpose of advocating the election of particular candidates or, as in this case, the passage or defeat of a ballot measure. The judicial and statutory authority relied on by appellant similarly concerns the expenditure of public funds for partisan electoral advocacy.

■ A claim that activity subject to the anti-SLAPP statute is unlawful, however, does not render the statute inapplicable. SBCAG need only show the complaint arises from acts in furtherance of its free speech rights. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906]; see also *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1245 [29 Cal.Rptr.3d 521].) The plaintiff must establish the unlawfulness of the activity as part of its burden of showing a probability of prevailing on its claim. (*Fox Searchlight Pictures, Inc.*, at p. 305; *Huntingdon Life Sciences, Inc.*, at p. 1246.)

### *No Probability of Prevailing on Claim*

■ Appellant contends that there is a probability that it will prevail on the merits because SBCAG's use of public funds to advocate passage of

---

[5] Section 425.16, subdivision (e) provides that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Measure A is both unconstitutional and a violation of statute. We disagree. Although a government agency cannot spend public funds in a partisan campaign for the passage or defeat of a ballot measure, we conclude that, in this case, the activity of SBCAG was not electoral advocacy because it was in furtherance of its express statutory duties and occurred before Measure A was qualified for placement on the ballot.

Appellant's constitutional argument regarding the use of public funds to advocate Measure A is based on the case of *Stanson v. Mott* (1976) 17 Cal.3d 206 [130 Cal.Rptr. 697, 551 P.2d 1] (*Stanson*). *Stanson* is inapposite. In *Stanson*, a taxpayer sued the Director of the State Department of Parks and Recreation for improperly spending department funds to advocate the passage of a park facilities bond. (*Id.*, at p. 209.) The complaint alleged that, after the bond measure had been placed on the ballot, the department prepared and disseminated promotional material favoring the measure, and utilized its staff to promote the measure through speaking engagements and other means.

█ The California Supreme Court held that "at least in the absence of clear and explicit legislative authorization, a public agency may not expend public funds to promote a partisan position in an election campaign . . . ." (*Stanson, supra*, 17 Cal.3d at pp. 209–210.) The court explained that public officials are not free to spend public funds only for a legislatively designated purpose. (*Id.*, at p. 213.) After a lengthy analysis, *Stanson* concluded that the Department of Parks and Recreation had no legislative authorization for its activities. (*Id.*, at pp. 209–210, 213–216.)

█ Unlike the agency in *Stanson*, SBCAG is authorized by statute to formulate and sponsor ballot measures such as Measure A. The Local Transportation Authority and Improvement Act (Act) is a comprehensive statutory scheme to "raise additional local revenues to provide highway capital improvements and maintenance and to meet local transportation needs in a timely manner." (Pub. Util. Code, § 180001, subd. (d); see generally Pub. Util. Code, § 180000 et seq.) The Act directs local governments to designate a "local transportation authorit[y]" to "develop and implement local funding programs that go significantly beyond current federal and state funding which is inadequate to resolve" local transportation needs. (Pub. Util. Code, § 180001, subd. (c).)

█ A local transportation authority is specifically empowered to impose a retail transaction and use tax of up to 1 percent to fund transportation improvements and services in its county. (Pub. Util. Code, § 180202.) Before a sales tax may be imposed, however, the authority must adopt a "transportation expenditure plan" for revenues "expected to be derived from" the tax, approve an ordinance imposing the tax, and obtain approval of the ordinance

by "a majority of the electors voting on the measure . . . at a special election called for that purpose by the board of supervisors, at the request of the authority . . . ." (Pub. Util. Code, §§ 180201, 180206.)

In essence, the complaint alleges that SBCAG was performing its statutory duty under the Act. SBCAG prepared a transportation expenditure plan and an ordinance necessary to place Measure A on the ballot in order to raise revenue necessary for the transportation programs and projects set forth in the expenditure plan. It then circulated the plan to member agencies for approval, and made public presentations concerning the merits of the plan and extension of the county sales tax.

Appellant does not address SBCAG's statutory authorization but, relying on dictum in *Stanson*, argues that SBCAG's conduct went beyond constitutional limits. (*Stanson, supra*, 17 Cal.3d at p. 217.) After citing cases from other jurisdictions expressing constitutional concern over the use of public funds to support or oppose ballot measures, *Stanson* states that a judicial reluctance to allow the use of public funds for election campaigns rests on an "implicit recognition that such expenditures raise potentially serious constitutional questions. A fundamental precept of this nation's democratic electoral process is that the government may not 'take sides' in election contests or bestow an unfair advantage on one of several competing factions. . . . [T]he selective use of public funds in election campaigns, of course, raises the specter of just such an improper distortion of the democratic electoral process." (*Ibid.*)

Even if the use of public funds for "election contests" or "election campaigns" is deemed unconstitutional as suggested by the *Stanson* court, the SBCAG activity challenged by appellant did not occur in an election contest or campaign. *Stanson* involved the expenditure of funds for partisan campaign materials and for speaking engagements to promote passage of a bond measure that had already been placed on the ballot and was the subject of a current election campaign. (See *Stanson, supra*, 17 Cal.3d at pp. 209–211.) The cases cited in *Stanson* and more recent cases also concern bond or other ballot measures that had already been qualified for placement on the ballot. (See *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 180–181 [118 Cal.Rptr.2d 330].)

In this case, the activity by SBCAG occurred before approval of its transportation expenditure plan or finalization of the ordinance placing Measure A on the ballot, and before the county board of supervisors had adopted the ordinance and certified Measure A for the 2008 ballot. SBCAG was performing its legislative duty to obtain financing for county transportation needs.

 Governments must provide facilities and services that require funding through taxation. The SBCAG is permitted and even required to expend public funds to determine the cost of the county's transportation needs and propose ordinances calling for elections to obtain the necessary revenue. When a government agency's activity represents its " '. . . judgment of what is required in the effective discharge of its responsibility, it is not only the right but perhaps the duty of the body to endeavor to secure the assent of the voters thereto. . . .' " (*Choice-in-Education League v. Los Angeles Unified School Dist.* (1993) 17 Cal.App.4th 415, 429–430 [21 Cal.Rptr.2d 303], quoting *Citizens, &c., Public Funds v. Bd. Ed., Parisippany-Troy Hills* (1953) 13 N.J. 172 [98 A.2d 673, 677].)[6]

*Stanson* is consistent with such a distinction between the expenditure of public funds for *governing* and the expenditure of funds for election *campaigning*. Nothing in *Stanson* suggests that the formulation and drafting of a proposed ballot measure before its qualification for the ballot constitutes partisan campaigning for the ballot measure. (See *League of Women Voters v. Countywide Crim. Justice Coordination Com.* (1988) 203 Cal.App.3d 529, 548–549 [250 Cal.Rptr. 161].) As examples of impermissible activity, *Stanson* cites the use of public funds to purchase bumper stickers, posters, and television and radio time and the dissemination of campaign literature prepared by private proponents or opponents of a ballot measure. (*Stanson, supra*, 17 Cal.3d at p. 221.) Such activity is associated with a campaign for a ballot measure already on the ballot, and is entirely different from the activity conducted by SBCAG.

Of course, the drafting and sponsorship of a ballot measure is a necessary prerequisite to the election campaign that follows its placement on the ballot. But, as one court has stated, "prior to and through the drafting stage of a proposed initiative, the action is not taken to attempt to influence voters either to qualify or to pass an initiative measure; there is as yet nothing to proceed to either of those stages. The audience at which these activities are directed is not the electorate per se, but only potentially interested private citizens; there is no attempt to persuade or influence *any* vote. [Citation.] It follows those activities cannot reasonably be construed as partisan campaigning." (*League of Women Voters v. Countywide Crim. Justice Coordination Com., supra*, 203 Cal.App.3d at p. 550.) The drafting and sponsorship of Measure A by SBCAG is not partisan campaigning, but "more closely akin to the proper exercise of legislative authority." (*Ibid.*)

---

[6] The *Citizens to Protect Pub. Funds* case was relied on by the court in *Stanson*. (*Stanson, supra*, 17 Cal.3d at pp. 216–217.)

In addition to challenging SBCAG's support of Measure A on constitutional grounds, appellant also contends that the activities are statutorily prohibited by Government Code section 54964. This argument fails for largely the same reasons as appellant's constitutional argument. Government Code section 54964 only prohibits partisan activity in support of a measure that has been placed on the ballot for a duly scheduled election.

Government Code section 54964, subdivision (a) provides that an "officer, employee, or consultant of a local agency may not expend or authorize the expenditure of any of the funds of the local agency to support or oppose the approval or rejection of a ballot measure, or the election or defeat of a candidate, by the voters." The statute defines "ballot measure" to mean "an initiative, referendum, or recall measure certified to appear on a regular or special election ballot" (*id.*, subd. (b)(1)) and "expenditure" to mean use of agency funds "for communications that expressly advocate the approval or rejection of a clearly identified ballot measure . . . by the voters" (*id.*, subd. (b)(3)).

By its explicit language the statute applies only to communications that "expressly advocate" approval or rejection of a "clearly identified ballot measure" that has been "certified" to appear on an election ballot. Government Code section 54964 does not prohibit the expenditure of public funds by local agencies to propose, draft or sponsor a ballot measure, including expenditures to marshal support for placing the measure on the ballot, or to inform the public of need for a sales or use tax or bond offering to provide revenue to pay for public improvements.

In addition, the limitation of Government Code section 54964, subdivision (b)(3) to "express advocacy" of qualified measures already placed on a ballot is entirely consistent with *Stanson*. As previously stated, *Stanson* concerned a bond measure that was on the ballot and discussed impermissible activity clearly relating to an election campaign for a measure already on the ballot. (*Stanson, supra*, 17 Cal.3d at p. 221.)

Moreover, the "express advocacy" standard for government involvement in partisan electoral activity has been applied to an analogous statutory scheme related to the reporting of political contributions. The Political Reform Act of 1974 requires the reporting of expenditures made "in connection with a communication which *expressly advocates* the . . . passage or defeat of a clearly identified measure." (Gov. Code, § 82031, italics added; see also Cal. Code Regs., tit. 2, § 18225, subd. (b).)

■ Finally, appellant's argument that SBCAG employees violated the Hatch Act is without merit for essentially the same reasons. The Hatch Act provides that a "State or local officer or employee may not . . . [¶] . . . use his official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office." (5 U.S.C. § 1502(a).) Not only are no SBCAG employees defendants in this lawsuit, there has been no showing that any employee has interfered with an election.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied November 5, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 21, 2009, S168605. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.