Filed 2/3/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GRANT REYNOLDS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF CALISTOGA et al.,<br><br>        Defendants and Respondents. | A136502<br><br>(Napa County<br>Super. Ct. No. 26-56480) |

Grant Reynolds, proceeding pro se, brought a public trust action challenging operation of a reservoir by the City of Calistoga (City) insofar as that operation affected downstream fisheries (the Public Trust Suit). He then initiated a second action, the matter on appeal here, challenging the City's use of Napa County sales tax revenue (the Tax Suit). He purported to bring the Tax Suit in the public interest and sought to make the sales tax revenues available for purposes of settling the Public Trust Suit. Reynolds is neither a resident nor a taxpayer of the City or Napa County, and he asserts no other personal interest in the City's use of the sales tax revenue. The trial court sustained the defendants' demurrer without leave to amend on the ground that Reynolds lacked standing to bring the Tax Suit. We agree that Reynolds lacks standing to pursue this action as a taxpayer, as a citizen suing in the public interest, or as a person suing to protect a public trust. We affirm.

1

# I.  BACKGROUND[1]

In May 2010, the Napa County Superior Court found that Reynolds, a resident of San Diego, had standing to bring the Public Trust Suit based on allegations that the City failed to comply with state law requiring it, as the owner/operator of a dam creating the Kimball Reservoir, to allow sufficient water to bypass the dam to support downstream fisheries.  (See *National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419; Fish & G. Code, § 5937.)  In the summer of 2010, fishery and hydrology experts investigated the issue, and unsuccessful settlement talks followed in the fall.  In May 2011, Reynolds filed a motion for summary adjudication of the public trust cause of action,[2] and one week later the City published a draft water bypass plan, which was adopted by the City Council in August 2011.  Prior to a scheduled trial date, the court granted the City's motion to dismiss the public trust cause of action as moot in light of the adopted bypass plan and entered judgment for the City.  That judgment is the subject of a related appeal (*Reynolds v. City of Calistoga* (A134190, app. pending) [consolidated with A135501 on July 3, 2012]).

---

[1] On September 16, 2013, Reynolds asked us to take judicial notice of the appellate record in the appeal of the Public Trust Suit (*Reynolds v. City of Calistoga* (A134190, app. pending) [consolidated with A135501 on July 3, 2012]).  We deferred ruling on the request and now grant it, construing it to include briefing in that appeal. (Evid. Code, §§ 452, subd. (d)(1), 459.)  We take notice of the existence of the documents and their contents, but not the truth of their contents.  (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.)  Facts from this source are recited herein solely for the purpose of providing context for the parties' arguments in this appeal of the Tax Suit.

[2] Reynolds's complaint in the Public Trust Suit also asserted private causes of action on behalf of Debbie O'Gorman, the owner by inheritance of land surrounding the headwaters of Kimball Creek, which flows into the Kimball Reservoir; of associated riparian rights; and of the water rights to the land where Kimball Reservoir is located.  In 1939, O'Gorman's ancestor negotiated a water rights agreement with the City, which granted him certain rights to use Kimball Creek water.  Reynolds's private causes of action purported to assert O'Gorman's rights under the water rights agreement, which apparently have been assigned to Reynolds.

Reynolds alleges that he urged the City to use funds raised by a Napa County sales tax (Measure A funds) to restore the Upper Napa River riparian environment as part of a settlement of the Public Trust Suit, but was told that all available funds had been expended on other projects. Reynolds concluded the City had used Measure A funds for a particular purpose (the Mount Washington Water Tank project, hereafter Water Tank Project) not permissible under the terms of the voter initiative that had approved the sales tax.

In June 2011, Reynolds filed the complaint in the Tax Suit challenging alleged misuse of Measure A funds. As subsequently amended, the complaint named several defendants—the City, the City's mayor, four City Council members, and the Napa County Flood Protection and Watershed Improvement Authority (Authority) (collectively Defendants)—and alleged that the Water Tank Project, proposed by the City and approved by the Authority as a project to be funded by Measure A funds, was not an authorized use of such funds, which he contends were to be used exclusively for flood protection and watershed improvement. Reynolds asserted a cause of action for breach of fiduciary duty, which was founded on allegations that "[a]ll property under the care and control of a county is held in trust by the county for the people of the entire state," and that the Defendants were "trustees of such property thereby owing a fiduciary duty to Plaintiff and all citizens of the State" and more specifically were "trustees of the money collected and deposited [pursuant to Measure A] who owe a fiduciary duty to all citizens (including Plaintiff) to insure that special tax funds are spent lawfully." He alleged that Defendants violated their fiduciary duty to the people of the state of California by allowing the Water Tank Project to be funded with Measure A funds. Reynolds sought a declaratory judgment that Measure A funds were not properly spent on the Water Tank Project, an order enjoining use of Measure A funds on the project, and an order directing the Defendants to repay Measure A funds already spent on the project.[3]

---

[3] Reynolds also sought a declaration that the Defendants were personally jointly and severally liable for repaying Measure A funds that had allegedly been misspent on a particular project, and that all replacement projects under Measure A must have prior

3

Reynolds alleged standing to bring the action on three grounds: as a *payer of sales tax* in Napa County; "as a *public trust beneficiary* interested in having Measure A funding applied to the restoration of the upper Napa River riparian habitat" where Kimball Reservoir is located; and "because the question to be decided by this complaint is one of a *public right sought to be enforced by a citizen* interested in having the law executed where the duty in question is related to [Measure A]." (Italics added.)

Defendants demurred to the complaint in part on the ground that Reynolds lacked standing. They argued that taxpayer standing could not be based on payment of sales tax; that public trust standing was inapplicable because Reynolds was not asserting a claim of harm to the public trust; and that the allegations did not support the narrow circumstances in which public right standing is recognized. Defendants also asserted laches as a defense.

The court sustained the demurrer without leave to amend, ruling: "Plaintiff does not have standing as a tax payer because sales tax is levied against businesses rather than individuals. He does not have standing under the public trust doctrine because he is not asserting a public trust claim. Lastly, he does not have standing under the public right doctrine because the claim for improper spending of tax revenue within Napa County does not rise to such a level."

Reynolds filed a motion for reconsideration.[4] He submitted evidence that he held a lien interest in O'Gorman's real property (a June 2010 deed of trust with assignment of rents that secured a $4 million loan) and argued he therefore had "a real, personal and direct interest in the subject matter of the [first amended complaint]." He also argued that the purpose of Measure A "was to bestow a benefit on all citizens of the State, not merely local residents" because its stated purpose was " 'to provide protection, save lives, protect

_____

written recommendation from a financial oversight committee before Measure A funds are spent on the project.

[4] While this motion was pending, Reynolds unsuccessfully moved to disqualify Judge Raymond Guadagni for cause. Reynolds does not challenge the disqualification ruling on appeal.

4

property, restore the Napa River, Napa Creek, and other tributaries, maintain Napa County's economic vitality, and enhance riparian environments,' " and "[s]uch waterways are part of the public trust. . . . Misappropriation of funds intended for the benefit of the public trust gives standing to any citizen to hold the responsible governmental entities and elected officials to account for their malfeasance."

The trial court denied the motion and entered judgment for the Defendants.[5] "Plaintiff has not offered any 'new' evidence or law that could not have been offered, in the exercise of reasonable diligence, prior to the court issuing its ruling denying the underlying demurrer on the ground plaintiff lacked standing. [¶] Even if plaintiff had satisfied the procedural requirements of [Code of Civil Procedure section] 1008, the court would nevertheless deny the motion. Having a lien interest on a property located in Napa County does not confer taxpayer standing on plaintiff. Moreover, the gravamen of this complaint is that [D]efendants misspent taxpayer funds. Plaintiff cannot obtain standing simply by characterizing his claims as one[s] for a violation of the public trust doctrine. Plaintiff provides no authority for the extension of the public trust doctrine in the manner he proposes herein. [¶] Lastly, even if the complaint could be considered as including a claim for violation of the public trust for which plaintiff had standing, the claim would nevertheless be barred by laches, as a matter of law, based on plaintiff's unreasonable and prejudicial delay in bringing the claims." The court entered judgment for the Defendants on July 13, 2012. Reynolds filed a notice of appeal from the judgment.

## II. DISCUSSION

This appeal is timely and properly brought as to the February 2012 order sustaining the demurrer (see *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695 [order sustaining demurrer is nonappealable, but may be reviewed on appeal of

---

[5] The City asked us to take judicial notice of the local rules of the Napa County Superior Court. We deferred ruling on this request and now grant it. (Evid. Code, §§ 451, 459.) The rules confirm that the court's tentative decision became its final decision when Reynolds failed to contest it. (Super. Ct. Napa County, Local Rules, rule 2.9.)

5

subsequent order of dismissal or judgment]) and the July 2012 order denying Reynolds's motion for reconsideration (Code Civ. Proc., § 1008, subd. (g) [denial of motion for reconsideration not appealable but reviewable on timely appeal of the underlying order]). We review an order sustaining a demurrer de novo. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080.) "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We review an order denying a motion for reconsideration under the abuse of discretion standard. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

" 'Standing is a jurisdictional issue that . . . must be established in some appropriate manner.' [Citation.]" (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 480.) We agree that Reynolds failed to establish standing to pursue this action.

A.    *Taxpayer Standing*

Reynolds first argues the trial court erred in ruling that he lacked standing to bring the suit as a taxpayer pursuant to Code of Civil Procedure section 526a (section 526a). That statute provides in relevant part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein." Reynolds correctly notes that the Supreme Court has held the residence requirement ("a citizen resident therein") unenforceable as a violation of equal protection. (*Irwin v. City of Manhattan Beach* (1966) 65 Cal.2d 13, 18–19.)

6

Reynolds has not shown that he was a taxpayer within the meaning of section 526a. His payment of sales tax, as a consumer buying retail products in Napa County, is insufficient because sales tax is imposed on the retailer, not the consumer. (*Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1047–1048; *Cornelius v. Los Angeles County etc. Authority* (1996) 49 Cal.App.4th 1761, 1777–1778; cf. *Santa Barbara County Coalition Against Automobile Subsidies v. Santa Barbara County Assn. of Governments* (2008) 167 Cal.App.4th 1229, 1236 [nonprofit organization that paid county sales tax *as a retailer* on its sales of t-shirts had taxpayer standing to sue county].) Reynolds's lien interest in O'Gorman's real property is also insufficient because it is not evidence that he paid any taxes on that property.

Reynolds's primary argument on appeal is that section 526a is designed to be a general citizen's remedy against illegal expenditures of government funds and that he should be granted standing to pursue the action in the public interest. "The primary purpose of [section 526a] . . . is to 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' [Citation.] [¶] California courts have consistently construed section 526a liberally to achieve this remedial purpose." (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267–268.) Specifically, "it has never been the rule in this state that the parties in suits under section 526a must have a personal interest in the litigation." (*Id.* at p. 269.) Such a requirement "would drastically curtail [these suits'] usefulness as a check on illegal government activity." (*Ibid.*) We agree that Reynolds's complaint falls within the government oversight purpose of the statute.

But even so, Reynolds cites no case, and we have found no case, in which a plaintiff was allowed to maintain a section 526a case without first satisfying the fundamental requirement of "taxpayer" status.[6] As *Torres v. City of Yorba Linda*

---

[6] *Osburn v. Stone* (1915) 170 Cal. 480, 482 (opinion implies plaintiff a city taxpayer in suit against city officials); *Wirin v. Parker* (1957) 48 Cal.2d 890, 891 (city taxpayer sued city chief of police); *Irwin v. City of Manhattan Beach, supra,* 65 Cal.2d at p. 16 (city taxpayer sued city); *Blair v. Pitchess, supra,* 5 Cal.3d at p. 265 (county

explains, "The courts have liberally construed the standing requirement for taxpayers. . . . [¶] Nonetheless, a plaintiff must establish he or she is a taxpayer to invoke standing under section 526a . . . . [Citations.]" (*Torres v. City of Yorba Linda, supra,* 13 Cal.App.4th at p. 1047.)

Because Reynolds has not established that he was a taxpayer in the City or in Napa County, we affirm the trial court's ruling that he lacks standing under section 526a.

B.    *Public Interest Standing*

Reynolds next argues he had standing under common law doctrine granting state citizens standing to seek redress for government misconduct. This standing doctrine, however, has been judicially recognized only in certain mandamus proceedings and not as an exception to standing under section 526a. Ordinarily, to have standing to seek a writ of mandate, a petitioner must be a "party beneficially interested" in the requested relief. (Code Civ. Proc., § 1086.)[7] It was in this context that our Supreme Court recognized a "public right/public duty" exception to the requirement of beneficial interest standing: " '[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.' " (*Bd. of Social Welfare*

taxpayers sued sheriff); *Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 156 (San Francisco taxpayer sued San Francisco); *Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1304, 1308 (opinion implies that plaintiff was a state taxpayer in suit against a state agency,); *Santa Barbara County Coalition Against Automobile Subsidies v. Santa Barbara County Assn. of Governments, supra,* 167 Cal.App.4th at p. 1236 (county taxpayer sued county); see also *Foster v. Coleman and Alexander* (1858) 10 Cal. 278, 281 (pre-§ 526a case where county taxpayer sued county deputy assessor); *Winn v. Shaw* (1891) 87 Cal. 631, 633 (pre-§ 526a case county taxpayer sued county auditor).

[7] " 'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. [Citations.]' " (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 (*Save the Plastic Bag Coalition*).)

8

*v. County of L. A.* (1945) 27 Cal.2d 98, 100–101.) "We refer to this variety of standing as 'public interest standing.' [Citation.]" (*Save the Plastic Bag Coalition, supra,* 52 Cal.4th at p. 166.) In *Save the Plastic Bag Coalition*, the court also cautioned, however, that "[n]o party . . . may proceed with a mandamus petition as a matter of right under the public interest exception." (*Id.* at p. 170, fn. 5.) "Judicial recognition of citizen standing is an exception to, rather than repudiation of, the usual requirement of a beneficial interest. The policy underlying the exception may be outweighed by competing considerations of a more urgent nature. [Citations.]" (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1237, disapproved in part on other grounds in *Save the Plastic Bag Coalition, supra,* 52 Cal.4th at pp. 160, 166–170.)

Cases cited by Reynolds confirm that this public interest standing exception has been consistently applied only in the context of mandamus proceedings. (See *Green v. Obledo* (1981) 29 Cal.3d 126, 131–132, 144–145 [recipients of public assistance have standing to seek writ of mandate compelling state officials to comply with federal law in their implementation of the public assistance program]; *Waste Management of Alameda County, Inc. v. County of Alameda, supra,* 79 Cal.App.4th at pp. 1236–1237 [corporation could have public interest standing to seek writ of mandate compelling county to comply with environmental laws with respect to competing company's project, but countervailing considerations supported denial of standing]; *Driving Sch. Assn. of Cal. v. San Mateo Union High Sch. Dist.* (1992) 11 Cal.App.4th 1513, 1516-1519 [driving schools had standing to seek writ compelling school district to stop charging high school students tuition for driver training classes offered at adult school]; see also *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439–440 [nonprofit voting rights organizations had standing to seek writ of mandate compelling county to carry out state law voter outreach obligations]; *Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 913 [citizens group had public interest standing to seek writ of mandate challenging certification of environmental impact report].)

9

Reynolds fails to point to any authority applying the public interest exception outside a mandamus proceeding. Reynolds does not seek writ relief here, nor does he argue on appeal that his complaint should be construed as a petition for a writ of mandamus. Rather than seeking to procure enforcement of a clear ministerial government duty (*California Assn. of Medical Products Suppliers v. Maxwell-Jolly* (2011) 199 Cal.App.4th 286, 302), the Tax Suit seeks redress for past alleged misfeasance. Reynolds's claim here is for alleged breach of "fiduciary duty" by local officials in expenditure of locally generated public revenue for local public purposes. Extending the "exception" as broadly as Reynolds would have us do would render the taxpayer standing requirements of section 526a meaningless.

Even if we were to assume that the public interest exception could properly be extended to provide standing in this context, application of the doctrine is still discretionary. As noted *ante*, even if a plaintiff otherwise meets the requirements of the public right/public duty exception in a mandamus proceeding, he is not entitled to proceed "as a matter of right." (*Save the Plastic Bag Coalition, supra,* 52 Cal.4th at p. 170, fn. 5.) "[T]he policy underlying the [public interest] exception may be outweighed in a proper case by competing considerations of a more urgent nature . . . ." (*Green v. Obledo, supra,* 29 Cal.3d at p. 145.) The trial court found that Reynolds "does not have standing under the public right doctrine because the claim for improper spending of tax revenue within Napa County does not rise to such a level." Reynolds neither argues, nor does it appear, that the trial court abused its discretion in denying Reynolds standing on this basis.

"When the duty is sharp and the public need weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater interest than that of a citizen who wants the law enforced. [Citations.] When the public need is less pointed, the courts hold the petitioner to a sharper showing of personal need." (*McDonald v. Stockton Met. Transit Dist.* (1973) 36 Cal.App.3d 436, 440; see, e.g., *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 795, 797–801 [policy considerations required denial of public interest standing to a member of a state board seeking a writ

10

compelling board to reverse a policy adopted over her dissent which she claimed was violation of statute].)

We find nothing in the policy considerations recognizing a citizen's interest in having laws executed and public duties enforced that would compel application here. (*Green v. Obledo, supra,* 29 Cal.3d at p. 144.) No "pointed" public need to recognize Reynolds's public interest standing is demonstrated. The judgments required of local officials in allocation of public funds for public purposes are already subject to challenge by county taxpayers, including the retailers who bear the sales tax. (See *Blair v. Pitchess, supra,* 5 Cal.3d at p. 269 [taxpayer has standing to challenge illegal procedure even when that procedure results in a small expenditure or savings of tax funds].) Reynolds complains that no city official or taxpayer has actually filed suit despite his entreaties that they do so. But the fact that other citizens with interests far more immediate than Reynolds's have declined his entreaties demonstrates, if anything, that the public duty is not as sharp and the public need not as weighty as Reynolds perceives them to be. Moreover, the public interest standing doctrine is designed to ensure that government misconduct *can* be challenged, not that *alleged* government misconduct *will* be challenged in every case.

Reynolds is not entitled to public interest standing as a matter of right, if at all, and he fails to demonstrate abuse of the trial court's discretion in rejecting his claim of standing.

C.      *Public Trust Standing*

Reynolds make no argument on appeal that he had public trust standing to pursue the instant action. Although he represents that Measure A is designed in part to protect or restore the Napa River riparian environment and could have been used to settle his public trust action, he does not allege that the direct object of this suit—the City's choice of how to spend its share of Measure A funds—resulted in any harm to the public trust in fisheries.

In sum, we conclude the trial court properly granted the Defendants' demurrer on the ground that Reynolds failed to establish standing to pursue his claims. Because we

11

agree that Reynolds lacked standing to pursue the claims presented in his complaint, we have no need to reach or discuss the trial court's finding that the complaint was barred by laches or other arguments presented by Reynolds and Defendants.[8]

### III.  DISPOSITION

The judgment is affirmed.  Reynolds shall bear the Defendants' costs on appeal.

_____
Bruiniers, J.

We concur:

_____
Simons, Acting P. J.

_____
Needham, J.

A136502

---

[8] For this reason we deny Reynolds's September 18, 2013 request that we take judicial notice of a Napa County grand jury report as it is not relevant to our discussion.

Superior Court of Napa County, No. 26-56480, Raymond A. Guadagni, Judge.

Grant Reynolds, in pro. per., for Plaintiff and Appellant.

Burke, Williams & Sorensen, Michelle Marchetta Kenyon and Matthew D. Visick for Defendants and Respondents City of Calistoga, Jack Gingles, Michael Dunsford, Chris Canning, Gary Kraus and Karen Slusser.

Minh C. Tran, County Counsel, and Robert C. Martin, Deputy County Counsel for Defendant and Respondent Napa County Flood Protection and Watershed Improvement Authority.