Filed 12/2/24  Schneider v. Conejo Valley Unified School Dist. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STEVEN SCHNEIDER et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CONEJO VALLEY UNIFIED SCHOOL DISTRICT, <br><br> Defendant and Respondent. | 2d Civ. No. B334090 <br> (Super. Ct. No. 56-2022-00571547-CU-WM-VTA) <br> (Ventura County) |

Steven Schneider and Carrie Burgert appeal after the trial court sustained without leave to amend a demurrer by the Conejo Valley Unified School District (District).  Appellants alleged the District's Teen Talk sexual education program violated state law.  Appellants also claimed defective notice regarding Teen Talk and surveys administered to students, as well as a violation of their state privacy rights due to a gender survey.  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2023, appellants filed a second amended complaint (SAC) seeking declaratory relief, injunctive relief, and writ of mandate.  Appellants alleged that in 2003, the Legislature passed a law requiring that all sexual health instruction in California schools be "age appropriate, objective, medically accurate and free of bias."  In 2015, the Legislature required schools to "teach students 'about gender, gender expression, gender identity, and [to] explore the harm of negative gender stereotypes.'"  The law still required instruction to be "'age appropriate' and presented in a way that is comprehensive, 'medically accurate and objective.'"

Appellants alleged the District failed to follow the law. Appellants cited the Teen Talk middle school curriculum, described as "a controversial curriculum that, among other things, promotes sexual activity by children, promotes high-risk sexual behaviors like anal and oral sex and promotes trans ideology while encouraging kids to withhold information from their parents."  Appellants alleged the curriculum teaches medically inaccurate information about abstinence and gender. Appellants asserted the District adopted Teen Talk even though an advisory committee had rejected it.

Appellants contended Teen Talk instructs "falsely" on issues related to sex and gender.  For example, appellants alleged Teen Talk falsely teaches (1) sex and gender are separate parts of one's identity; and (2) biological sex falls on a spectrum.  It also teaches "the medically inaccurate belief that '[s]ome people do not identify with a gender at all.'"

Appellants also complained Teen Talk "reflects political bias by teaching children about concepts like 'homophobia' and

2

'transphobia' . . . ." Appellants further alleged the curriculum's instruction on a wide range of birth control options was age inappropriate. Appellants claimed Teen Talk led to "a highly sexualized school environment . . . ." Appellants asserted the District "d[id] not have the right to teach kids about woke political issues that are, at best, medically unsettled and certainly not age appropriate."

The SAC alleged appellants each had two children, ages 9 and 13, who attended school within the District. Appellants opted their older children out of the middle school Teen Talk. Appellants alleged they would also have to opt out their younger children if Teen Talk continued.

Appellants alleged the District failed to give parents proper notice and opportunity to excuse their children from Teen Talk "during the 2021-22 or 2022-23 school years and will likely not do so during the 2023-24 school year." Appellants also contended "the District has been conducting highly sexualized and age-inappropriate surveys of students . . . without following the parental notification/consent procedures." Those surveys included a CA Healthy Kids Survey that gave insufficient notice of "'personal sexual identity questioning'" and a "'Confidential School Success Plan'" that queried gender issues. Appellants claimed the District had a policy of withholding the latter completed survey from parents.

The SAC set forth four causes of action, seeking: (1) a judicial declaration that Teen Talk violates California law (Ed. Code, § 51933); (2) judicial declarations that the District (a) violated California law by failing to give parents proper notice and opportunity to excuse their children from Teen Talk during the 2021-22 or 2022-23 school years, and (b) has been conducting

highly sexualized and age-inappropriate surveys without following the parental notification and consent procedures (*id*., § 51938); (3) a writ of mandate commanding the District to replace its current health and sexual education curriculum and to provide proper notice and excusal opportunities related to it (Code Civ. Proc., § 1085); and (4) a judicial declaration that the District's Confidential School Success Plan, including the policy of withholding it from parents, violates appellants' right to privacy under the California Constitution.

In September 2023, the District filed a request for judicial notice of documentation indicating Ms. Burgert had removed her children from the District's school system in June 2023. Appellants did not object to the request. At a November 2023 hearing, appellants' counsel indicated Mr. Schneider's younger child was currently in fifth grade and would be receiving the Teen Talk curriculum in the 2025-26 school year. Mr. Schneider had opted his older child out of the curriculum, as indicated in the complaint.

The trial court sustained without leave to amend the District's demurrer to the SAC. The court concluded appellants lacked standing. "As an alternative analysis," the court determined the complaint lacked the specificity to state a cause of action. The complaint did "little more than . . . indicate how [p]laintiffs think Teen Talk is bad."

DISCUSSION

We conclude appellants lack standing to prosecute a writ of mandate. We likewise determine appellants cannot pursue

4

declaratory relief because no actual, present controversy exists. Thus, the trial court did not err in sustaining the demurrer.[1]

### Standard of Review

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

When the trial court sustains a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

### Writ of Mandate

"A writ of traditional mandamus (Code Civ. Proc., § 1085) may be used to compel the performance of a duty that is purely ministerial in nature or to correct an abuse of discretion." (*Khan*

---

[1] We decline the District's invitation to dismiss the appeal for alleged failure to comply with the rules of court. Neither the record nor appellants' briefing warrants that action. Moreover, in the interest of judicial economy, we will construe the order sustaining the demurrer without leave to amend as a final appealable judgment. (*Cardenas v. Horizon Senior Living, Inc.* (2022) 78 Cal.App.5th 1065, 1069.)

*v. Los Angeles City Employees' Retirement System* (2010) 187 Cal.App.4th 98, 105.) "To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists (Code Civ. Proc., § 1086); (2) "'a clear, present . . . ministerial duty on the part of the respondent'"; and (3) a correlative "'clear, present, and beneficial right in the petitioner to the performance of that duty.'"'" (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340.)

"To have standing to seek a writ of mandate, a party must be 'beneficially interested' . . . i.e., have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.'" (*Associated Builders and Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361-362.) The party's beneficial interest "must be direct and substantial." (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 (*Save the Plastic Bag*).) The beneficial interest standard "is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"'" (*Associated Builders*, at p. 362.) "A petitioner has no beneficial interest within the meaning of the statute if he or she 'will gain no direct benefit from [the writ's] issuance and suffer no direct detriment if it is denied.'" (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1053 (*SJJC Aviation Services*).)

Appellants failed to allege a beneficial interest in a writ of mandate to replace the middle school Teen Talk curriculum or modify its notice and excusal opportunities. Ms. Burgert has

removed both her children from District schooling. Appellants' opening brief indicates Mr. Schneider's older child is now in high school and no longer subject to the middle school Teen Talk curriculum. Mr. Schneider's younger child would not be subject to Teen Talk until the 2025-26 school year. (*Cf. Doe v. Albany Unified School Dist.* (2010) 190 Cal.App.4th 668, 684 [student had beneficial interest where school allegedly failed to provide statutorily mandated physical education]; *Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 917 [students and parents had beneficial interest based on defendants' alleged failure to perform federally mandated duties related to discrimination].) Any impact on this younger child would be speculative and conjectural at this point. Before that child reaches middle school, the child could leave the District school system; or Teen Talk, along with its associated notice and excusal procedures, could change or be superseded altogether.

A party not beneficially interested may nonetheless have standing under the public interest exception. (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 913.) This exception applies "'"where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty . . . .""'" (*Green v. Obledo* (1981) 29 Cal.3d 126, 144.) In that situation, the party "'"need not show . . . any legal or special interest in the result, since it is sufficient that [the party] is interested as a citizen in having the laws executed and the duty in question enforced.""'" (*Ibid*.)

To determine public interest standing, "'[t]he courts balance the applicant's need for relief (i.e., [the applicant's] beneficial interest) against the public need for enforcement of the official duty. When the duty is sharp and the public need

weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater personal interest than that of a citizen who wants the law enforced.'" (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1174.)  However, "where the claim of 'citizen' or 'public interest' standing is driven by personal objectives rather than 'broader public concerns,' a court may find the litigant to lack such standing." (*SJJC Aviation Services, supra,* 12 Cal.App.5th at p. 1057.)

Additionally, "[n]o party . . . may proceed with a mandamus petition as a matter of right under the public interest exception. . . . 'Judicial recognition of citizen standing is an exception to, rather than repudiation of, the usual requirement of a beneficial interest.  The policy underlying the exception may be outweighed by competing considerations of a more urgent nature.'" (*Save the Plastic Bag, supra,* 52 Cal.4th at p. 170, fn. 5.)

Appellants lack public interest standing.  Appellants' desire to curb a particular ideology or viewpoint is not an issue of public concern.  Appellants cannot imbue their personal beliefs with legal force by invoking public interest standing.  Enforcement of personal beliefs is antithetical to that type of standing.

Furthermore, summarily characterizing certain aspects of school curriculum as false, inappropriate, or biased does not establish the existence of a weighty public need.  For example, the SAC claims Teen Talk reflects political bias by teaching about concepts like homophobia and transphobia.  However, the Education Code provides that "[i]nstruction and materials shall teach pupils about gender, gender expression, gender identity, and explore the harm of negative gender stereotypes." (Ed. Code, § 51933, subd. (d)(1)(6).)  The SAC also criticizes as age

8

inappropriate the range of birth control methods Teen Talk covers. But the Education Code requires instruction "about the effectiveness and safety of all FDA-approved contraceptive methods in preventing pregnancy . . . ." (*Id.*, § 51934, subd. (a)(9).) The SAC is devoid of allegations establishing a public need for enforcement of a duty.

Moreover, the public interest exception is not available as a matter of right. Competing factors can overcome its application. Here, permitting public interest standing could subject the curriculum to perpetual litigation, as one person's benevolent change becomes another's cause du jour. Allowing concerned citizens to successively challenge school curriculum and related notice and excusal procedures with expensive, time-consuming litigation does not serve the public good. (Cf. *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 799 [considering the cost and threat of litigation in determining standing].) Thus, even assuming public interest standing was otherwise appropriate, the threat of continual litigation is a competing factor overcoming such standing. "[T]he public interest standing doctrine is designed to ensure that government misconduct *can* be challenged, not that *alleged* government misconduct *will* be challenged in every case." (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 875.)

*Hector F. v. El Centro Elementary School Dist.* (2014) 227 Cal.App.4th 331, 342, is distinguishable. There, a parent whose oldest child had matriculated nevertheless had public interest standing to enforce anti-discrimination and anti-harassment statutes. The child had allegedly suffered "physical and verbal abuse by other children because of his disabilities and the fact that English is his second language." (*Id.* at p. 334.) The public

9

need to prevent this type of harm was "manifest." (*Id*. at p. 341.) Here, by contrast, conforming sexual education to appellants' personal beliefs does not serve a public need. Furthermore, as discussed above, appellants' case involves the threat of successive litigation, which is a competing factor overcoming public interest standing. In *Hector F.*, "there [were] no similar competing considerations . . . ." (*Id*. at p. 342.) Indeed, *Hector F.* specifically stated that concern over the "perpetuation of litigation" was not present in that case. (*Ibid.*)

None of appellants' children are currently subject to middle school Teen Talk. Public interest standing is unavailable. Appellants lack standing to prosecute the writ.

*Declaratory Relief*

"'The fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject.'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79; Code Civ. Proc., §§ 1060, 1061.) "Whether a case is founded upon an 'actual controversy' centers on whether the controversy is justiciable." (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 540.) "The concept of justiciability involves the intertwined criteria of ripeness and standing. A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 (fn. omitted).)

"A two-pronged test is used to determine the ripeness of a controversy: (1) whether the dispute is sufficiently concrete so that declaratory relief is appropriate; and (2) whether the parties will suffer hardship if judicial consideration is withheld." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 64.) While

10

"'the "actual controversy" language . . . encompasses a *probable* future controversy relating to the legal rights and duties of the parties' . . . [i]t does not embrace controversies that are 'conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court.'" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582.)

Appellants' requests for declaratory relief regarding Teen Talk mirror their request for writ of mandate. For the same reasons appellants lack a beneficial interest in the writ, their complaint does not present "'an actual controversy that is currently active'" as to Teen Talk and related notice and excusal procedures. (*D. Cummins Corp. v. United States Fidelity & Guaranty Co.* (2016) 246 Cal.App.4th 1484, 1489.)

Nor have appellants established any actual, active controversy regarding allegedly improper or insufficiently noticed surveys pertaining to sex and gender. The SAC does not allege appellants' children received any of these surveys. Additionally, the SAC does not specify which age groups receive these surveys. Thus, it is unclear when, if ever, appellants' children will be subject to the challenged surveys. Conjecture and speculation do not support appellants' actions for declaratory relief.

"'[T]he fact that an issue raised in an action for declaratory relief is of broad general interest is not enough for the courts to grant such relief in the absence of a true justiciable controversy [citations].'" (*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 496; *Reynolds v. City of Calistoga, supra,* 223 Cal.App.4th at p. 874 ["[The] public interest standing exception has been consistently applied only in the context of mandamus proceedings"]; *Spotlight on Coastal Corruption v. Kinsey* (2020) 57 Cal.App.5th 874, 883 ["'[T]here is no general "public interest"

11

exception to the requirement of standing'"].) Even if the public interest standing exception is available for declaratory relief actions, we would decline to apply it for reasons already discussed. At minimum, the palpable threat of perpetual litigation is a competing factor that forecloses the exception.

Appellants have not shown there is a reasonable possibility amendment could cure the foregoing defects. (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) Thus, the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.[2]

DISPOSITION

The judgment is affirmed. The District shall recover costs on appeal.


NOT TO BE PUBLISHED.




CODY, J.


We concur:



YEGAN, Acting P. J.



BALTODANO, J.

---

[2] Given our resolution of this case, we do not decide whether the SAC should have been dismissed for failure to state a cause of action.

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

JW Howard/Attorneys, John W. Howard and Scott J. Street for Plaintiffs and Appellants.

Dannis Woliver Kelley, Sue Ann Salmon Evans, Jenell Van Bindsbergen, and William G. Ash for Defendant and Respondent.